UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL PAINTER #265772,  )
                          )
            Plaintiff,    )    Case No. 2:08-cv-253
                          )
v.                        )    HON. R. ALLAN EDGAR
                          )
SHANNON MONTGOMERY, et al., )
                          )    **OPINION**
            Defendants.   )
_____)

**I. Facts**

Plaintiff Michael Painter #265772, a former inmate, filed this pro se civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Shannon Montgomery, R.N., Unknown Doaust, R.N., and Dr. Mian Qayyum. Defendants Doaust and Qayyum were dismissed pursuant to an order granting stipulation on May 11, 2009 (docket #28).

Plaintiff's complaint alleges that on October 10, 2007, Defendant Montgomery responded to a call from custody staff when Plaintiff began to experience symptoms of a heart attack while on his job assignment at the MBP Dairy Farm. Defendant Shannon was called to the Farm by Corrections Officer Rosenburg. Defendant Shannon and others lifted Plaintiff into the a Rover vehicle and transported Plaintiff to the Facility Health Care Services. Upon arrival, Defendant Shannon tried to give Plaintiff oxygen, but the tank malfunctioned. Plaintiff was given a nitroglycerin pill. A second oxygen tank was brought in, which also malfunctioned, and Plaintiff was given a second nitroglycerin pill.

A nurse from the level V area arrived and started an I.V. Plaintiff was given a third nitroglycerin pill. Plaintiff waited almost 45 minutes for an ambulance. When the ambulance

arrived, one of the medical team took Plaintiff's blood pressure, which was 50/33, and gave him a fourth nitroglycerin pill. That individual stated, "at least they did something right this time by giving him the I.V." Plaintiff was taken to Marquette General Hospital, where a doctor told him that his artery was blocked from high cholesterol. Plaintiff was operated on and a stent was inserted, which did not work properly. A second stent was implanted and Plaintiff was discharged on October 13, 2007. However, Plaintiff was returned to the hospital on October 19, 2007, due to chest pain and a third stent was implanted.

Plaintiff contends that his heart attack was the result of the failure of Defendant Montgomery and other medical staff to properly monitor and treat his cholesterol level, as well as their failure to place Plaintiff on a low sodium diet. Plaintiff states that as a result of his heart condition, he is unable to exercise or work.

Plaintiff claims that Defendant's actions violated his rights under the Eighth Amendment to the United States Constitution. Plaintiff is suing Defendant in her individual and official capacity and is seeking damages.

## II. Analysis

### A. Standard of Review

Presently before the Court is the Defendant's Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. The time for filing a response has elapsed and the matter is ready for decision. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that

there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

### B. Qualified immunity

Defendant claims that she is entitled to qualified immunity because Plaintiff cannot show that her conduct violated his rights under the United States Constitution. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances

two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*.

In this case, Plaintiff is claiming that Defendant was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo*

*County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results

in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

In support of her motion for summary judgment, Defendant offers excerpts from the Control Center Log Book for October 10, 2007. The entry for 7:05 p.m., states that emergency medical services was notified for Plaintiff per instructions from Defendant Montgomery. (Defendant's Exhibit C.) Defendant also attaches excerpts from Plaintiff's medical records, showing that he received regular monitoring of his blood sugar, and that at the time of his heart attack, he weighed 206 pounds. Plaintiff's diagnoses prior to his heart attack included Diabetes Mellitus, Hyperlipidemia, Tobacco Abuse, Dental Caries, and Obesity. On October 10, 2007, when Plaintiff began complaining of chest pain, dizziness and shortness of breath, Defendant started an I.V., attempted to give Plaintiff oxygen, and had staff call emergency medical services. In addition, Defendant reported on Plaintiff's condition to the hospital emergency room. (Defendant's Exhibit D.)

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). The record in this case clearly shows that Plaintiff received medical attention for his complaints as the result of Defendant's evaluation of his condition. Defendant started an I.V., administered nitroglycerin, attempted to give Plaintiff oxygen, and contacted emergency medical services to have Plaintiff transported to the local emergency room. Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v.*

*Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). Therefore, because Plaintiff cannot establish that his Eighth Amendment rights were violated, Defendant is entitled to qualified immunity.

### C. Eleventh Amendment Immunity

Defendant asserts that she is entitled to summary judgment on Plaintiff's official capacity claims against them because such claims are barred by the Eleventh Amendment. Any claims against the individually-named Defendant in her official capacity does not state a claim upon which relief can be granted. *See Will v. Michigan Department of State Police*, 491 U.S. 58 (1989) (claims against a state agency or an official in his/her official capacity are claims against the state, and are not claims against a "person" subject to Section 1983 liability); *Frederick v. Abramajtys*, No. 94-1935, 1995 WL 564321, **1 (6th Cir. Sept. 21, 1995) (unpublished). Moreover, the Eleventh Amendment bars suit against the State or one of its agencies in federal court unless the state has given express consent, regardless of the relief sought. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), overruled in part on other grounds, *Will*, 491 U.S. 58; *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (State and Board of Corrections).[1] The State of Michigan has not consented to civil rights suits in the federal courts. *See Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). The Eleventh Amendment therefore bars official-capacity suits for damages against its employees. Therefore, any official capacity claims are properly dismissed.

---

[1] The Sixth Circuit has held that since an official capacity suit for retroactive relief, such as monetary damages, is deemed to be against the State, whose officers are the nominal Defendants, the claim is barred by the Eleventh Amendment. *Doe v. Wigginton*, 21 F.3d 733, 736-737 (6th Cir. 1994).

### III. Conclusion

In light of the foregoing, the court will grant Defendant's motion for summary judgment (docket #15) and dismiss this action in its entirety.

A Judgment consistent with this Opinion will be entered.


Dated:  3/9/2010                                       */s/ R. Allan Edgar*
                                                       R. ALLAN EDGAR
                                                       UNITED STATES DISTRICT JUDGE